AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

*FILED*
*At Albuquerque NM*
*APR 2 0 2018*
*MATTHEW J. DYKMAN*
*CLERK*

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>Black LG phone with a cracked face, model LQL57BL,<br>serial number 703CQWC031865 | )<br>)<br>)<br>)<br>) |

Case No. 18-MR-338

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____New Mexico_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | | *Offense Description* |
|---|---|---|
| 18 U.S.C. § 2113 | Bank Robbery | |

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Daniel Fondse, Special Agent - FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ____04/20/2018____

_____
*Judge's signature*

City and state:  Albuquerque, New Mexico

Laura Fashing, U.S. Magistrate Judge
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT

## FOR NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF BLACK LG PHONE WITH CRACKED FACE, MODEL LQL57BL, SERIAL NUMBER 703CQWC031865, CURRENTLY LOCATED AT 4200 LUECKING PARK AVE NE, ALBUQUERQUE, NM | Case No. _____ |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Daniel Fondse, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent of the Federal Bureau of Investigation (FBI), United States Department of Justice. I have been so employed since May 2017. I am therefore authorized to investigate federal criminal offenses. I am currently a member of the Violent Crimes Squad of the Albuquerque Division of the FBI and my primary assignment is to investigate bank robberies. I have received on the job training from other experienced agents and detectives in the investigations of violent crimes.  Prior to joining the FBI, I spent three years as a sworn law enforcement officer of the San Diego Police Department.  My investigative training and experience includes, but is not limited to, conducting surveillance, interviewing subjects, victims,

and witnesses, writing affidavits for and executing search and arrest warrants, managing

cooperating sources, issuing subpoenas, collecting evidence, and analyzing public records.

3.      This affidavit is intended to show only that there is sufficient probable cause for

the requested warrant and does not set forth all of my knowledge about this matter.  The

statements contained in this affidavit are based upon my investigation, training and experience

and information provided by other law enforcement officers or from other reliable sources.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

1.      The property to be searched is a black LG phone with a cracked face, model

LQL57BL, serial number 703CQWC031865, hereinafter the "Device."  The Device is currently

located at 4200 Luecking Parke Ave NE, Albuquerque, NM.

2.      The applied-for warrant would authorize the forensic examination of the Device

for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

3.      On April 02, 2018 your Affiant arrested Ryan Schorr (Schorr) for alleged

violations of 18 USC § 2113, Bank Robbery.  Your Affiant took custody of Schorr at the

Bernalillo County Metropolitan Detention Center (MDC), following his release from MDC

custody.  At the time of his arrest, Schorr confirmed the items in his MDC property bag were his

personal possessions, which included the Device.  On the same day, Schorr verbally confirmed

with your Affiant he has been called by the name "Dirty" and that he has a daughter in Texas.

4.      Later, your Affiant viewed the profile picture associated with a Facebook account in the name of Josh Dough (Lil Dirty).  The profile picture appears to depict Ryan Schorr (Schorr), including the approximate size and location of a tattoo on his right cheek.

5.      In late 2017, the account in the name of Josh Dough (Lil Dirty) communicated with a Facebook account operated by a different individual who is currently the subject of an active federal arrest warrant for bank robbery.  The communication included slang terms often used in the place of the words "gun", "stolen vehicle", "illegal drugs" and "robbery." Furthermore, Josh Dough (Lil Dirty) asked the other account for their phone number so he could call and talk about a third person, named Fidel.  Fidel Castillo was arrested in late 2017 for bank robbery.  An account in the name of Fidel Castillo is Facebook friends with both Josh Dough (Lil Dirty) and the individual previously described as the subject of an active federal arrest warrant for bank robbery.  On at least two other occasions, not previously listed in this document, Josh Dough (Lil Dirty) provided his phone number to the individual previously described as the subject of an active federal arrest warrant for bank robbery using Facebook.  Both communications included slang commonly used to request a phone call.  Josh Dough (Lil Dirty) also made a statement in a Facebook message referring to his need for money to provide child support for his daughter in Texas.

6.      On September 21, 2017, a suspect committed a robbery at US Bank, 2015 Eubank Blvd NE, Albuquerque, NM.  Based on witness statements and security camera images, the suspect was a white or Hispanic male in his late 20's or early 30's, approximately 5'5" to 5'8" in height, with a slender build and stooped posture.  Bank security video showed the suspect had

tattoos on his left cheek and the left side of his neck. A witness stated the suspect had a star-shaped tattoo on his left cheek and a circular tattoo on the left side of his neck.

7.      Immediately upon entering the bank, the suspect approached the station of the victim teller. He placed a handwritten note on the counter which read, paraphrased, "I have a gun, hand over money from registers, make it quick." The suspect also verbally ordered the victim teller to give him all of the money. The teller complied with the suspect's verbal and written demand, removing money from a teller drawer and handing it over to the suspect. The suspect took the money and fled from the bank.

8.      US Bank is insured by the Federal Deposit Insurance Corporation (FDIC), wherefore it is a bank as defined under 18 USC § 2113. US Bank suffered a financial loss in the robbery.

9.      On October 03, 2017, a suspect committed a robbery at US Bank, 3801 Isleta Blvd SW, Albuquerque, NM. Based on witness statements and security camera images, the suspect was a Hispanic male with light completion in his 20's or 30's, approximately 5'5" to 5'10" in height with brown hair. Bank security video shows what appears to be tattoos on the suspect's face and both hands.

10.     The subject entered the bank and waited in line. He approached an available teller and placed a handwritten note on the counter in front of them. The victim teller read the word "Gun" in the note and realized the suspect intended to rob the bank. The victim teller feigned they did not understand and asked the suspect for his account number, in the hope he would become frustrated and leave. The suspect told the teller to read the note. The victim teller

4

read the note and saw it said the suspect had a gun and demanded money.  The victim teller complied with the robbery demand and placed money from her teller drawer on the counter.  The suspect took the note and the money and fled from the bank.

11.     US Bank is insured by the Federal Deposit Insurance Corporation (FDIC), wherefore it is a bank as defined under 18 USC § 2113. US Bank suffered a financial loss in the robbery.

12.     In early 2018, a witness, not otherwise identified as a witness in this document and whose identity is known to the FBI, provided a statement that Ryan Schorr, also known by the nickname "Dirty," committed both bank robberies previously described in this document. The witness was shown images taken from the bank security cameras during the robberies.  The witness recognized the suspect as Ryan Schorr and recognized articles of clothing worn by the suspect in both robberies.

13.     In early 2018, your affiant interviewed Ron Schorr, the father of Ryan Schorr. Ron Schorr viewed an image of the suspect taken during the September 21, 2017 robbery.  Ron Schorr said he recognized the suspect as his son, Ryan Schorr.  Ron Schorr then viewed an image of the suspect taken during the October 03, 2017 robbery. Ron Schorr said "That's the other side of his face," when he viewed the image.  Ron Schorr did not recognized any of the clothing worn by the suspect in the two robberies.

14.     Your affiant reviewed a previous booking photograph of Ryan Schorr dated March 26, 2018.  He resembles the approximate physical description of the suspect in both robberies.  The booking file lists Ryan Schorr as 5'8" in height and weighing 165 lbs.  The

5

booking photograph of Schorr shows a diamond shaped tattoo on Schorr's right cheek, a star shaped tattoo on Schorr's left cheek and a large tattoo on the left side of Schorr's neck.  Part of the tattoo on the left side of his neck is a circular design.

15.     Security video from the October 3, 2017 robbery shows a diamond shaped tattoo on the suspect's right cheek of the same approximate, size, shape and location as the tattoo on Schorr's right cheek in the booking photo.

16.     Security video from the September 21, 2017 robbery shows a tattoo on the suspects left cheek of the same approximate size and location as the tattoo on Schorr's left cheek in the booking photo.  The security video also shows a large tattoo with a circular design on the left side of the suspect's neck of the same approximate size, shape and location as the tattoo seen on Schorr's neck in the booking photo.

17.     On March 29, 2018, your affiant interviewed Ryan Schorr.  He denied committing a robbery at either of the banks identified in this document.

18.     Your Affiant knows from training and experience that social media, to include Facebook, is used to communicate with others through both public and private posts, and through a messaging service.   Your Affiant knows from training and experience that Facebook users frequently use mobile devices, such as cell phones, to operate the Facebook application and communicate with other users, as well as to store content communicated on Facebook.

19.     Your Affiant knows from training and experience that criminals frequently use electronic devices to coordinate and promote criminal acts.  These communications can be in the form of calls, text messages or messaging applications built into the social media platforms

6

including photographs, or videos. Electronic communication can be used to make logistical arrangements for a criminal act, such as arranging transportation, or disposing of evidence.

20.     The Device is currently in the lawful possession of the Federal Bureau of Investigation. It came into the FBI's possession when it was seized during the arrest of Schorr. Therefore, while the FBI might already have all necessary authority to examine the Device, your Affiant is seeking this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

21.     The Device is currently in storage at 4200 Luecking Parke Ave NE, Albuquerque, New Mexico. Based on your Affiant's training and experience, the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the FBI.

## TECHNICAL TERMS

22.     Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless

7

telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.   Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.   Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or

miniature hard drives.  This removable storage media can also store any digital

data.  Depending on the model, a portable media player may have the ability to

store very large amounts of electronic data and may offer additional features such

as a calendar, contact list, clock, or games.

d.   GPS:  A GPS navigation device uses the Global Positioning System to display its

current location.  It often contains records the locations where it has been.  Some

GPS navigation devices can give a user driving or walking directions to another

location.  These devices can contain records of the addresses or locations involved

in such navigation.  The Global Positioning System (generally abbreviated

"GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite

contains an extremely accurate clock.  Each satellite repeatedly transmits by radio

a mathematical representation of the current time, combined with a special

sequence of numbers.  These signals are sent by radio, using specifications that

are publicly available.  A GPS antenna on Earth can receive those signals.  When

a GPS antenna receives signals from at least four satellites, a computer connected

to that antenna can mathematically calculate the antenna's latitude, longitude, and

sometimes altitude with a high level of precision.

e.   PDA:  A personal digital assistant, or PDA, is a handheld electronic device used

for storing data (such as names, addresses, appointments or notes) and utilizing

computer programs.  Some PDAs also function as wireless communication

devices and are used to access the Internet and send and receive e-mail.  PDAs

usually include a memory card or other removable storage media for storing data

9

and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

10

23.     Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

25.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

26.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but

11

not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

27.     *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

28.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Daniel Fondse
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
On    20 April, 2018      :

UNITED STATES MAGISTRATE JUDGE

12

## ATTACHMENT A

1.      The property to be searched is a black LG phone with a cracked face, model

LQL57BL, serial number 703CQWC031865, hereinafter the "Device."  The Device is currently

located at 4200 Luecking Parke Ave NE, Albuquerque, NM.

2.      This warrant authorizes the forensic examination of the Device for the purpose of

identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of
18 USC § 2113, Bank Robbery, and involve Ryan Schorr, including:

      a.   Any information relating to the planning or execution of the robbery of a bank or
          other commercial establishment.

      b.   Any communication indicating Ryan Schorr was involved or had knowledge of a
          bank robbery committed by another person.

      c.   Any information, to include photographs, depicting clothing, tools, firearms,
          vehicles or persons associated with a bank robbery.

      d.   Any information recording Ryan Schorr's schedule, travel or physical location
          from September 14, 2017 to October 10, 2017;

      e.   Any communication between Ryan Schorr and any other individual currently the
          subject of an arrest warrant or in federal custody for bank robbery.

2.      Evidence of user attribution showing who used or owned the Device at the time
the things described in this warrant were created, edited, or deleted, such as logs, phonebooks,
saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items
of evidence in whatever form and by whatever means they may have been created or stored,
including any form of computer or electronic storage (such as flash memory or other media that
can store data) and any photographic form.